MANUFACTURED HOME COMMUNITIES, INC., and MHC Operating Limited Partnership, an Illinois limited partnership, dba Westwinds Manufactured Home Community, Plaintiffs,

v.

CITY OF SAN JOSE, and Enis Rice, Gary DeWet, Martin Vancil, and Marsha Skratt, individually, Defendants.

No. C03–01713 JW.

United States District Court,
N.D. California.

Aug. 18, 2003.

David J. Bradford, Lisa Scruggs, Jenner & Block, Chicago, IL, Elliot L. Bien, Bien & Summers, LLP, Novato, CA, Paul T. Jensen, San Jose, CA, for Plaintiffs.

Shannon Kathleen Smyth–Mendoza, Office of the City Attorney, San Jose, CA, for City of San Jose.

Bruce E. Stanton, Law Offices of Bruce E. Stanton, San Jose, CA, for Enis Rice, Gary DeWet, Martin Vancil, and Marsha Skratt.

**ORDER GRANTING DEFENDANT CITY OF SAN JOSE'S MOTION TO DISMISS; GRANTING DEFENDANT CITY OF SAN JOSE'S MOTION FOR ATTORNEYS' FEES AND COSTS; DENYING DEFENDANT CITY OF SAN JOSE'S MOTION FOR SANCTIONS; GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

WARE, District Judge.

### I. INTRODUCTION

The following motions were noticed for hearing on August 4, 2003: (1) Defendant City of San Jose's ("City") motion to dismiss Plaintiffs' Manufactured Home Communities, Inc., and MHC Operating Limited Partnership, an Illinois limited partnership, dba Westwinds Manufactured Home Community's (collectively "MHC") Complaint; (2) City's request for judicial notice; (3) City's motion for attorneys' fees and sanctions; and (4) Defendants Enis Rice, Gary DeWet, Martin Vancil and Marsha Skratt's ("Individual Defendants") motion to dismiss MHC's Complaint. MHC timely filed oppositions. The City timely filed replies to MHC's oppositions. The Individual Defendants did not file a reply.

Pursuant to Civil Local Rule 7–1(b), the Court found it appropriate to take all of

these motions and objections under submission without oral argument. Based on all papers filed to date, the Court grants City's motion to dismiss this case with prejudice and City's motion for attorneys' fees and costs. The Court denies City's motion for sanctions. The Court grants the Individual Defendants' motion to dismiss this case. The motions are discussed below.

## II. BACKGROUND

MHC is a large publicly traded real estate investment company that owns and operates Westwinds Manufacture Home Community ("Westwinds"), located in San Jose, California. MHC leases approximately seven hundred twenty-five (725) mobilehome spaces at Westwinds. The four Individual Defendants in this case are mobilehome owners who lease spaces in Westwinds. The amount of rent MHC is permitted to charge its tenants is regulated by the City of San Jose Mobilehome Rent Ordinance ("Ordinance").

The Ordinance was enacted as part of San Jose Municipal Code ("SJMC") § 17.22.010 et seq. for the following purposes: (1) to prevent excessive and unreasonable rent increases to mobilehome park residents; (2) to prevent an exploitation of the shortage of available mobilehome lots in the city; (3) to permit mobilehome park owners to receive a fair and reasonable return; and (4) to establish a process for rent dispute resolution. SJMC § 17.22.020.

The Ordinance limits rent increases for mobilehome spaces hooked up after September 7, 1979, based upon a formula set forth in § 17.22.570. The Ordinance utilizes the "maintenance of net operating income" ("MNOI") approach to stabilize mobilehome rents. Under this approach, a mobilehome park owner may increase rents for mobilehome units up to a "Maximum Annual Percentage Increase" (based primarily on the Consumer Price Index) without the need for review from the City's administrative hearing process. SJMC §§ 17.22.155.C.1 and 17.22.450.A. Furthermore, a park owner may increase rents without review, regardless of the increase, under certain circumstances after the mobilehome owner or tenant vacates the unit or pursuant to a long-term lease of over twelve months. SJMC §§ 17.22.370, 17.22.450.D and 17.22.450.E.

The combination of both the annual rent increases to the controlled spaces and the occurrence of vacancy decontrol over the years would normally allow most parks to increase rental income at a rate that would allow, at minimum, a constitutionally guaranteed return. However, for those instances in which a park owner believes that the annual maximum increase will not allow the owner to recover a reasonable return, the Ordinance provides the right to petition for an increase in excess of the maximum annual percentage increase allowed. SJMC § 17.22.470.A. and 17.22.700 et seq.

At the hearing for such a petition, a Hearing Officer compares the net operating income ("NOI") from a "base year"—during which a market rent is presumed to have applied so as to provide the park owner with a fair and reasonable return—with the NOI from the year prior to the hearing. SJMC §§ 17.22.480 and 17.22.550. The Ordinance establishes 1985 as the base year. *MHC Operating Limited Partnership v. City of San Jose*, 106 Cal.App.4th 204, 130 Cal.Rptr.2d 564 (2003).

The Ordinance allows the mobilehome park owner to take the NOI from the base year and adjust it for inflation using a factor based upon a percentage of the Consumer Price Index. SJMC § 17.22.550. The Hearing Officer then determines the rent increase in the amount required to

provide the landlord with a fair and reasonable return. SJMC § 17.22.580.A. In doing so, the Hearing Officer determines what a fair and reasonable return in accordance with the Ordinance would be, the gross income required to produce the fair and reasonable return, and the rent increase needed to produce the required gross income. SJMC § 17.22.580.B.

MHC purchased Westwinds in August 1997. Under a deal with the previous owner, the ground-lease rent and other expenses for the Park allegedly increased by $1.3 million per year. (Compl. ¶ 12.) On May 29, 1998 MHC petitioned for an extraordinary rent increase for Westwinds with the City's Rental Dispute Program. (Compl. ¶ 13.) MHC's original Rent Petition used 1985 as the base year and contained an estimate of 1985 NOI. (MHC's 1998 Mobilehome Petition, at 989, attached to City's Motion to Dismiss as Exh. "C".) However, the application was later resubmitted in June or July 1998, wherein MHC subsequently amended its Rent Petition and used 1996 as the base year. (Compl. ¶ 17; *MHC Operating Limited Partnership*, 106 Cal.App.4th at 211–212, 130 Cal. Rptr.2d 564; and MHC's Mobilehome Petition, at 422–426, attached to City's Motion to Dismiss as Exh. "F".)

At the hearings held on MHC's petition, the City acknowledged that MHC was unable to establish the actual 1985 NOI because the Park's prior owner had not retained adequate financial records for 1985. (Compl.¶ 15.) MHC sought to use 1996 as the base year for determination of NOI, instead of 1985. However, the City hearing officer rejected that approach and denied MHC's petition for an extraordinary rent increase, specifically citing MHC's failure to establish actual base year NOI for 1985. (Compl. ¶ 17.; *MHC Operating Limited Partnership*, 106 Cal.App.4th at 210, 130 Cal.Rptr.2d 564.)

MHC filed a writ petition on December 29, 1998, in Superior Court Case number CV778980. (MHC's Verified Petition for Writ of Administrative Mandamus, at 00001–00009, attached to City's Motion to Dismiss as Exh. "D".) In a tentative decision dated July 14, 1999, Superior Court Judge John F. Herlihy granted MHC's petition for writ of mandate challenging the Hearing Officer's October 6, 1998 Final Order. (Tentative Decision dated July 14, 1999 in Superior Court Case No. CV 778980, at 00703, attached to City's Motion to Dismiss as Exhibit "G".) In so doing, the state court concluded that the Ordinance was unconstitutional as applied to MHC because it "lacked a mechanism for calculating fair return when mobilehome park owners cannot prove actual base year NOI." *MHC Operating Limited Partnership*, 106 Cal.App.4th at 211, 130 Cal. Rptr.2d 564.

In response to the trial court's original decision, in 1999, the City enacted an Urgency Ordinance intended to address the concerns raised by the state court. (Urgency Ordinance No. 25996, attached to City's Motion to Dismiss as Exh. "B".) The Urgency Ordinance amended the Ordinance by adding a section giving the Hearing Officer the discretion to consider 1985 *estimates* of NOI "when actual base year information is unavailable." (Compl.¶ 20.)

At the subsequent administrative hearing in November 1999, further hearings to consider MHC's rent increase application were held. (Compl.¶ 22.) MHC provided no 1985 estimates and instead provided 1996 figures. The City provided an expert witness, Dr. Barr, for the mobilehome tenants who "opined that a reasonable estimate of 1985 NOI could be made using the available information." *MHC Operating Limited Partnership*, 106 Cal.App.4th at 212, 130 Cal.Rptr.2d 564. The Hearing Officer concluded that "MHC had failed to

carry its burden of establishing an estimated 1985 base year NOI, and she again denied MHC a rent increase." *Id.* Her decision was made "without prejudice", ruling that MHC may reapply for the rent increase based on estimates of 1985 or such other base years as authorized by the Ordinance. *Id.*

MHC subsequently filed a motion for the issuance of a supplemental writ of administrative mandamus, seeking an order mandating the hearing officer to consider a base year other than 1985. MHC asserted that given its alleged inability to calculate actual or estimate 1985 NOI and the $1.3 million increase in the ground lease expenses which resulted in a significant drop in MHC's net operating income, the City hearing officer ignored the Urgency Ordinance and the court's prior order, and that her refusal to establish MHC's fair rate of return using alternative base years was an abuse of discretion. (Compl.¶ 24, 26.) MHC did not challenge the validity of the Ordinances at this time.

A hearing was held in May 2000, in which the trial court denied MHC's request for a Supplemental Writ. (Compl.¶ 25.) Judge Herlihy found that there was substantial evidence in the record (primarily the testimony of Dr. Barr) to support the Hearing Officer's finding that estimating 1985 NOI was feasible. (Tentative Decision on Motion for Issuance of Supplemental Writ of Administrative Mandate, dated May 30, 2000, in Superior Court Case No. CV 778980, at 1490:12–17, attached to City's Motion to Dismiss as Exh. "I".) The trial court found that the Hearing Officer did not abuse her discretion when she denied MHC's rent increase petition without prejudice after MHC refused to estimate 1985 NOI and, thus, denied MHC's motion for a supplemental writ. (See *MHC Operating Limited Partnership*, 106 Cal.App.4th at 222–223, 130 Cal.Rptr.2d 564; Compl. ¶ 25).

The Sixth District Court of Appeal affirmed the trial court decision on February 13, 2003. *Supra* at 226, 130 Cal.Rptr.2d 564. The Court of Appeal based its decision on whether substantial evidence in the record supported the Hearing Officer's determination that base year NOI could in fact be estimated. *Id.* at 224, 130 Cal. Rptr.2d 564. The Court of Appeal determined that 1985 base year NOI could be estimated. *Id.* at 225, 130 Cal.Rptr.2d 564. In particular, the Court noted the evidence presented by the tenants' expert witness, Dr. Barr, who, after analyzing the data available to the parties, concluded that "reasonable estimates can be made by the hearing officer in this case about the 1985 base year information." *Id.* The Court of Appeal also took note of MHC's original rent increase application which included a schedule of 1985 base year information, thus further indicating that 1985 NOI could be estimated. *Id.* MHC did not challenge the validity of the Ordinance at that time.

On or about March 26, 2003, MHC filed a Petition for Review ("Petition") with the California Supreme Court. (MHC's Petition for Review, attached to City's Motion to Dismiss as Exh. "K".) MHC asserted for the first time in its Petition that the City's current Ordinance is, in effect, unconstitutional on its face by allowing hearing officers the ability to consider "estimates" of base year net operating income where exact information regarding base year income and expenses is not available. *Id.* at 3–4. This argument is also now being asserted by Plaintiff in this federal action which was filed before there had been any determination by the California Supreme Court on MHC's Petition. Since the filing of this action, the Supreme Court denied MHC's Petition on May 21, 2003.

On May 22, 2002, MHC notified several homeowners, including the four Individual

Defendants in the present action, that it had learned that the mobilehome space they lease at Westwinds was not their principal residence and was therefore exempt from rent control under Cal. Civ. Code § 798.21. (Compl.¶ 64.) MHC did not first seek determination by the Rental Dispute Board or state court that the subject mobilehome sites were exempt. (Compl.¶ 77, 84.) On December 2002, MHC received a letter from Deputy City Attorney Shannon Smyth–Mendoza that stated that MHC had committed at least five violations of the Rent Control Ordinance by unilaterally increasing the rent charged without first applying for the rent increase with the City's Rental Dispute Program, as required by the Ordinance. See SJMC § 17.22.700. The City indicated that if MHC did not permit these tenants to be charged rent control rental rates, the City would take legal action against it. (Compl.¶ 65.) The City further informed MHC that MHC would have to file a petition before the City's hearing officers before it could charge and collect market rent from those tenants MHC had unilaterally determined were second homeowners ineligible for rent control under the Ordinance. (Compl.¶ 66.) Since bringing this lawsuit, Plaintiff has sent these individual Defendants another notice of rent increase above the rent-controlled amount, effective September 2003. The Individual Defendants have not paid the rent increase amounts noticed by MHC.

On April 17, 2003, MHC filed a complaint in this Court in which it alleged that the Ordinance and its requirement that a rent increase be based on a 1985 base year NOI violates MHC's right to procedural due process (Counts I and III) and equal protection (Count II) and that the Ordinance, both as applied to MHC and on its face, violates the Fifth Amendment Takings Clause (Counts VII and VIII). In addition, the complaint alleges that the City's decision to grant rent control to second homeowners not eligible for protection under the Ordinance, without providing MHC notice and an opportunity to be heard, violates MHC's right to procedural due process (Count IV). MHC also seeks a declaration of its rights under the Mobilehome Residency Law, Cal. Civ.Code § 798.21, and injunctive relief from the City's grant of rent control to ineligible residents (Counts V and VI).

City claims that the complaint is a restatement of the state trial court and appellate court record and decisions, which denied MHC's challenges to an administrative hearing officer's 1998 denial of MHC's petition for a rent increase based upon alleged violations of MHC's constitutional rights. City claims that the federal allegations brought in this Court could have and should have been raised in state court during the pendency of that action. City states that MHC alleges no new facts in its federal complaint that could not have been brought in state court.

City further claims that the claims related to the Individual Defendants are not ripe for adjudication in this Court because MHC has failed to obtain a final administrative decision from the City's Rental Dispute Program in regard to MHC's 2002 demand for rent increases. Further, there is no federal question to be adjudicated as MHC's claims only involve the interpretation of a state statute. Thus, a facial challenge to the ordinance "as applied" is not ripe under the *Williamson County* test since the Ordinance has yet to be applied as to Individual Defendants.

### III. STANDARDS

#### A. Motion to Dismiss

In ruling on a motion to dismiss, the court must accept as true all allegations of material fact and must construe said allegations in the light most favorable to the

non-moving party. *Western Reserve Oil & Gas Co. v. New,* 765 F.2d 1428, 1430 (9th Cir.1985). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enterprises,* 476 F.2d 393, 396 (9th Cir.1973). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts stated under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984). In order to grant a motion to dismiss, it must appear to a certainty that a plaintiff would not be entitled to relief under any set of facts which could be proved. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987).

### B. *Judicial Notice*

■ As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion." *Branch v. Tunnell,* 14 F.3d 449 (9th Cir. 1994) (*quoting Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990)). Two notable exceptions are (1) that the court may take judicial notice of matters of public record, Fed.R.Evid. 201(b)(2); *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986); and (2) the court may consider a document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned. Fed. R.Evid. 201(f); *Townsend v. Columbia Operations,* 667 F.2d 844, 848–49 (9th Cir. 1982).

### C. *Attorneys Fees and Costs*

Federal Rules of Civil Procedure, Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." To the extent that a motion to dismiss is granted, the moving defendant is considered the prevailing party within the meaning of Rule 54(b). *Burda v. M. Ecker Co.* 954 F.2d 434, 440 n. 9 (7th Cir.1992).

■ The court has the discretion to allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs pursuant to 42 U.S.C. § 1988. In a civil rights case, fees may be awarded under 42 U.S.C. § 1988 against an unsuccessful plaintiff "only if the action is meritless, in the sense it is groundless or without foundation." *Elks Nat. Foundation v. Weber,* 942 F.2d 1480, 1485 (9th Cir.1991).

### D. *Sanctions*

Federal Rule of Civil Procedure Rule 11 governs the filing of pleadings, motions and other papers with the court. The Rule permits sanctions of any person who signs an improper pleading submitted to the court. This Rule, as discussed in *Paciulan v. George,* 38 F.Supp.2d 1128 (N.D.Ca.1999), states in pertinent part:

Every pleading, written motion and other paper [filed with the court] shall be signed by at least one attorney of record...or by the party...The signature of an attorney or party constitutes a certificate by the signer that to the best of the person's knowledge, information, and belief, formed after a[ ] [reasonable inquiry]...the [paper...] is [1] not interposed for any improper purpose... [2] [is] warranted by existing law or a good faith argument for the extension...of existing law...and [3] the...contentions have evidentiary support or...are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. If...the court determines that [the rule] has been violated, the court may...impose an appropriate sanction...

*Id.* at 1144.

■ The purpose of Rule 11 is to deter dilatory or abusive pretrial tactics and to streamline litigation by excluding baseless filings. *Cooter & Gell v. Hart-*

*marx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1542 (9th Cir., 1986). The test imposed by the Rule is an objective one. *Business Guides, Inc. v. Chromatic Comm. Enter., Inc.,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *Yagman v. Republic Ins.,* 987 F.2d 622 (9th Cir.1993); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986). Under this objective approach to Rule 11, an attorney can run afoul of Rule 11 by filing a cause of action considered unwarranted by law in that there can be no plausible, good faith argument made by a competent attorney in support of the proposition asserted. *Id.* at 829, 833.

## IV. DISCUSSION

### A. City's Motion to Dismiss and Request for Judicial Notice

#### 1. Request for Judicial Notice

As a preliminary matter, the Court finds that it may properly take judicial notice of the matters of public record as requested by City.

Pursuant to Federal Rules of Evidence, Rule 201(b)(2), the Court may take judicial notice of public records if such records are not subject to reasonable dispute and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R.Evid. 201(b)(2). The Court must take judicial notice of such facts when requested by a party and supplied with the necessary information. Fed.R.Evid. 201(b)(2). ■ In the present case, the Court properly takes judicial notice of the Ordinance and the Urgency Ordinance because

the City has provided the Court with a certified copy of the City of San Jose Mobilehome Rent Ordinance (Chapter 17.22) and a certified copy of the City of San Jose's Urgency Ordinance No. 25996. The accuracy of these documents can not reasonably be questioned and MHC makes no objection to their accuracy nor the Court's ability to take judicial notice of them. For the same reasons, the Court may also take judicial notice of the documents filed in state court and provided by City, pursuant to Federal Rules of Evidence, Rule 201(f). Therefore, the Court grants City's request for judicial notice in its entirety.

#### 2. City's Motion to Dismiss MHC's Complaint

##### a. Counts I, II and III

The City claims that the following of MHC's 42 U.S.C. § 1983 claims should be dismissed because they are barred by the *Rooker–Feldman* doctrine: (1) Count I, Denial of Procedural Due Process; (2) Count II, Denial of Equal Protection Under the Laws; and (3) Count III, Denial of Procedural Due Process based upon the alleged bias of the hearing officer. In addition, City contends that jurisdiction is lacking since MHC brought this action while the state court case was still pending requiring abstention by this Court under the *Younger* doctrine. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[1]

■ The *Rooker–Feldman* doctrine bars a plaintiff who is unsuccessful in state court from attempting to re-litigate in the federal forum any claim litigated or "inextricably intertwined" with the issues raised

---

1. Although it need not reach City's abstention argument, the Court doubts whether *Younger* applies to the case at bar because the federal relief sought by the complaint will not interfere in some manner in the terminated state

court litigation. *Green v. City of Tucson,* 255 F.3d 1086, 1094 (9th Cir.2001). Here, the California Supreme Court denied MHC's petition for review of the judgment in the Administrative Writ Case on May 21, 2003.

in the state court action. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Ninth Circuit case law precedent is clear that any suit in which federal relief would reverse or modify the state judgment is barred. *Bates v. Jones*, 131 F.3d 843, 856 (9th Cir.1997) (en banc); *See also, Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 222 (9th Cir.1994).

MHC claims that the case at bar does not seek review or reversal of the state court's interpretation of the Ordinance. Instead, MHC argues that its federal claims challenge the constitutionality of the Ordinance and seek to have the Ordinance invalidated because it is unconstitutional. Specifically, MHC alleges that the Ordinance itself deprives MHC of its right to procedural due process and equal protection and effects a taking of MHC's property.

■ Contrary to MHC's assertions, the state record is clear that the constitutionality of the Ordinance was inextricably intertwined with the state court action. The Ninth Circuit has explained the term "inextricably intertwined" as follows: "courts have generally concluded that claims are inextricably intertwined when the district court must scrutinize both the challenged rule and the state court's application of that rule." *Dubinka*, 23 F.3d at 222. In its initial writ petition, the City adopted the 1999 Urgency Ordinance upon the state court's finding that the Ordinance was unconstitutional as applied to Plaintiff. Further, MHC specifically asserted the constitutional claims arising from the state court claims in its Petition for Review to the California Supreme Court. (*See* MHC's Verified Petition for Writ of Administrative Mandamus, at 00008, attached to Defendant City of San Jose's Motion to Dismiss Complaint as Exh. "D"; *See also*

Tentative Decision dated July 14, 1999 in Superior Court Case No. CV 778980, at 00703, attached to Defendant City of San Jose's Motion to Dismiss Complaint as Exh. "G"; *See also* MHC's Petition for Review, attached to Defendant City of San Jose's Motion to Dismiss Complaint as Exh. "K".) The stated grounds for review in MHC's Petition for Review to the California Supreme Court is illustrative of the inextricably intertwined constitutional claims at issue:

> This case presents a constitutional issue of first impression and substantial economic import for the State. (Rule 28(b)(1), California Rules of Court) It is settled that rent-control jurisdictions must allow affected property owners a fair return and provide a fair procedure for obtaining such a return. (See generally, *Kavanau v. Santa Monica Rent Control Board* (1997) 16 Cal.4th 761, 770–772, 66 Cal.Rptr.2d 672, 941 P.2d 851.)

*Id.* at 2. The inevitable conclusion upon review of the state proceedings is that MHC is erroneously attempting to re-litigate in the federal forum claims litigated and "inextricably intertwined" with the issues raised in the state court action. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. at 462, 103 S.Ct. 1303; *See also Rooker v. Fidelity Trust Co.*, 263 U.S. at 415–416, 44 S.Ct. 149.

To the extent that MHC had not specifically enumerated the constitutional principles in the lower court proceedings, the *Rooker–Feldman* doctrine holds that "[B]y failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court. This result is eminently defensible on policy grounds. We have noted the competence of state courts to adjudicate federal constitutional claims."

*Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. 1303.

The state court has already conclusively adjudicated the issues being asserted here—namely that the Ordinance itself deprives MHC of its right to procedural due process and equal protection and effects a taking of MHC's property. Pursuant to the *Rooker–Feldman* doctrine, MHC is precluded from re-litigating issues previously adjudicated in the state forum in federal court.

█ Moreover, the state court judgment against MHC was affirmed on appeal. *MHC Operating Limited Partnership,* 106 Cal.App.4th at 226, 130 Cal.Rptr.2d 564. Pursuant to *res judicata,* a final judgment on the merits bars relitigation of claims litigated or that could have been litigated in the proceeding. *Palomar Mobilehome Park Assoc. v. City of San Marcos,* 989 F.2d 362, 365 (1993). The Court is not swayed by MHC's contention that the state court action involved a different primary right than the case at bar. Although MHC was attempting to seek relief under municipal law through administrative remedies, the constitutionality of the ordinance and its application to MHC was part and parcel of the proceedings.

█ MHC claims that is does not now seek to reverse the state court decision. Instead, MHC seeks to invalidate the law because it is allegedly unconstitutional. Even though MHC's complaint does not expressly request a review of the state court's judgment or does not name the state court as a defendant, this Court would be unable to pass judgment on MHC's claims without addressing the state court's determinations on those issues. Any remedy for Plaintiff on these claims would in effect nullify that judgment in violation of *res judicata.*

MHC's further argument that it could not have litigated the constitutionality of the claims to the hearing officer in state court without violating the judicial powers doctrine is rendered moot by the fact that MHC specifically asserted that the Ordinance was unconstitutional in its petition to the California Supreme Court. The California Supreme Court, unquestionably vested with the judicial powers to hear the constitutionality of state laws, has denied MHC's Petition.

As stated above, the *Rooker–Feldman* doctrine forbids federal district courts from reviewing state court judgments. Thus, this Court also lacks subject matter jurisdiction to hear this case.

Lastly, to the extent that MHC contends that it was denied procedural due process due to the alleged bias of the hearing officer who presided over the 1998–1999 petitions for a rent increase, this claim was never raised as part of the state court proceedings stemming from the initial petition. Since MHC clearly had ample opportunity to raise the bias argument, the Court cannot now entertain a claim of bias to challenge the Ordinance on due process grounds. *Feldman, supra.* Further, MHC's reliance on *Haas v. County of San Bernardino,* 27 Cal.4th 1017, 119 Cal. Rptr.2d 341, 45 P.3d 280 to allege actual bias is misplaced. Unlike the governmental body in *Haas,* that was both a party to the dispute and the entity that selects and hires the hearing officer to preside over the dispute, *id.* at 1026–1027, 119 Cal. Rptr.2d 341, 45 P.3d 280, the City was not a party to the administrative hearings between MHC and the tenants. The end result is that MHC is precluded by both the *Rooker–Feldman* doctrine and *res judicata* from asserting this claim which should have been brought during the proceedings in state court. For these reasons, the Court dismisses Counts I, II and III of Plaintiff's Complaint with prejudice.

### b. *Counts IV, v. and VI*

Count IV of MHC's Complaint alleges Denial of Procedural Due Process under 42 U.S.C. § 1983 regarding the provision of rent control protection to ineligible second homeowners. Count V of MHC's Complaint prays for declaratory relief pursuant to Mobilehome Residency Law § 798.21. Count VI of MHC's Complaint prays for injunctive and other relief against the City and Individual Defendants via enforcement of the second homeowner exemption under Mobilehome Residency Law § 798.21. All of these claims are predicated on MHC's allegation that the City has "rendered a final decision" in regard to the application of the Ordinance as to the individually named defendants. (Compl.¶ 64.)

■ City argues that Counts IV, V and VI of MHC's Complaint are not ripe for adjudication under the *Williamson County* (*See Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)) ripeness doctrine and fail to state a claim within the federal question jurisdiction of this Court. According to the *Williamson County* court, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186, 105 S.Ct. 3108. In order to satisfy the *Williamson County* ripeness test, MHC must prove that it obtained a final administrative decision from the agency responsible for enforcing a regulation, *id.* at 186–94, 105 S.Ct. 3108, and that it has availed itself of state judicial remedies in an effort to obtain "just compensation." *Id.* at 199–200, 105 S.Ct. 3108.

■ In this case, MHC has not attempted to obtain a final administrative decision from the administrative hearing officer. Pursuant to the Ordinance, the administrative hearing officer conducts the hearing pursuant to a request for a rent increase. SJMC § 17.22.790.A. The record does not show that MHC ever applied for an exemption or rent increase, as required by the Ordinance. Instead, MHC is relying on a letter from an attorney for the City expressing an opinion regarding application of the Ordinance. SJMC § 17.22.700. MHC clearly failed to avail itself of the administrative process set forth in the Ordinance for seeking a rent increase as to the Individual Defendants. The letter cannot be construed as a "final decision" under *Williamson County.* Since MHC argues that the Ordinance is unconstitutional "as applied" to MHC, under *Williamson County,* MHC must demonstrate that it was the City who applied the Ordinance to Plaintiff. Plaintiff is unable to do so.

Due to the failure of MHC to apply for an exemption or rent increase as mandated by the Ordinance, it has failed to satisfy the necessary predicate for a taking claim to be ripe for review. It is axiomatic that Plaintiff has also failed to exhaust its administrative and state court remedies as to the application of the City's Ordinance to MHC involving the Individual Defendants. *Supra* at 192–193, 105 S.Ct. 3108. The Court need not consider MHC's argument that further resort to the statutory procedure for obtaining a rent increase is and would be futile because MHC has not sought even the first step of the statutory procedure. As previously discussed, the Court disagrees with MHC that the hearing officer would be biased against MHC. Therefore, any argument of futility is purely speculative. *Amberhill Properties v. City of Berkeley,* 814 F.2d 1340 (9th Cir.1987). MHC must avail itself of the administrative process before MHC may argue that compliance with the administrative process for seeking an exemption and rent increase is futile.

Because MHC's claims IV, V and VI are not ripe for adjudication, this Court lacks subject matter jurisdiction and the claims are dismissed. The aforementioned allegations involve interpretation and application of the Ordinance and an exemption for local rent control regulation under state law (Cal. Civ.Code § 798.21) as applied to the Individual Defendants. (Compl.¶ 63–72.) These allegations in no way state a claim within the federal question jurisdiction of this Court. Therefore, claims IV, V and VI of MHC's Complaint are dismissed with prejudice.

### c. *Counts VII and VIII*

In Counts VII and VIII of MHC's Complaint, MHC claims that the Ordinance "as applied" to MHC and on its face violates 42 U.S.C. § 1983 and the Fifth Amendment Takings Clause. City argues that to the extent MHC is making an "as applied" challenge to the Ordinance, those claims are not ripe as MHC failed to obtain a final ·administrative determination and failed to exhaust administrative remedies. The City further argues that these claims are barred by the *Rooker–Feldman* doctrine. *See Feldman, supra.* The City argues that to the extent Counts VII and VIII of the complaint are making a facial challenge, its action is barred by the one (1)-year statute of limitations applicable to § 1983 actions.

In support of the "as applied" claim, MHC claims that the City has failed to substantially advance the purpose of permitting MHC to receive a fair and reasonable return given its unduly burdensome, arbitrary and capricious insistence that MHC establish its NOI in 1985 before it can obtain a rent increase pursuant to SJMC §§ 17.22.480 and 17.22.150 of the Ordinance. (Compl.¶ 96.) To the extent that MHC is alleging that the Ordinance is unconstitutional "as applied", it has failed to follow the necessary administrative remedies in order to make this issue ripe for review by this Court. As previously discussed, MHC's "as applied" claims are not ripe due to the failure of MHC to obtain a final administrative determination. These claims are further precluded by the *Rooker–Feldman* doctrine and *res judicata.*

In its facial takings claim, MHC contends that the requirement that it comply with the 1985 base year NOI requirement pursuant to §§ 17.22.480 and 17.22.510 of the Ordinance denies it a fair return and does not advance a legitimate government purpose. (Compl. ¶ 94.) The City claims that these challenges are barred by the *Rooker–Feldman* doctrine as well as the one year statute of limitations. The City contends that because the Ordinance was enacted in 1986 and the Urgency Ordinance was adopted in 1999, MHC is barred from bringing a timely facial challenge to the Ordinance. *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680 (9th Cir.1993) (Ninth Circuit stated that the statute of limitations for all § 1983 claims in California accruing after 1985 is one year.) *Id.* at 688.

MHC claims that its § 1983 claim is timely brought because it had no knowledge of the harm the Ordinance caused at the time the Ordinance or Urgency Ordinance was enacted. MHC further contends that the City's interpretation of the Ordinance and the requirement that 1985 base year NOI be used did not become effective until after the state court affirmed the City hearing officer's interpretation of the Ordinance, effective February 2003.

 The Court finds that the character of the Ordinance remained unchanged since the requirement that 1985 be used as the base year was not altered by the Urgency Ordinance. Accordingly, MHC was aware of the effect of the Ordinance well

before it asserted this untimely claim in federal court. The facial claim is not only untimely, it is also barred by the *Rooker–Feldman* doctrine, as previously discussed. Therefore, the Court dismisses Claims VII and VIII of MHC's Complaint with prejudice.

### B. *City's Motion for Attorneys' Fees, Costs and Sanctions*

The Court dismisses MHC's complaint in its entirety with prejudice. Because City is the prevailing party within the meaning of Rule 54(b), costs and attorneys' fees are warranted. Fed. R. Civ. Pro. 54(b); *Burda v. M. Ecker Co.* 954 F.2d 434, 440 n. 9 (7th Cir.1992). City's motion for attorneys' fees and costs is granted. MHC is ordered to pay City attorneys' fees in the amount of $5,775.00 (38.5 hours × $150).[2]

 The Court agrees that this action should be dismissed in its entirety without leave to amend under clearly constituted legal principles such as the *Rooker–Feldman* doctrine, *Williamson County, res judicata* and the statute of limitations applicable to § 1983 actions. Imposition of sanctions under Fed. R. Civ. Pro. 11 is proper if the paper filed is frivolous, legally unreasonable or without factual foundation, even though it was not filed in subjective bad faith. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46–48, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Business Guides, Inc. v. Chromatic Comm. Enter., Inc.,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *Yagman v. Republic Ins.,* 987 F.2d 622 (9th Cir.1993); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986). However, Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. *Green-*

*berg v. Sala,* 822 F.2d 882, 887 (9th Cir. 1987). The imposition of Rule 11 sanctions is discretionary. The court is not required to impose a monetary sanction or any sanction at all even if a violation has clearly occurred. See, Committee Notes on Amendments to Federal Rules of Civil Procedure (1993); 146 F.R.D. 401, 587. The Court therefore declines to impose monetary sanctions. City's motion for sanctions is denied.

### C. *Individual Defendants' Motion to Dismiss MHC's Complaint*

In May 2002, MHC served each of the Individual Defendants with a notice that it had determined that each of the Individual Defendants' mobilehome spaces was completely exempt from rent control under the Local Ordinance. As discussed previously, the issue of whether the Individual Defendants' spaces are exempt from the Ordinance has never been administratively determined by the City, or submitted to the state courts. However, MHC continues to demand increased rent from the Individual Defendants, which they have refused to pay to date.

Count V of MHC's Complaint seeks declaratory relief, specifically that this Court determine MHC's rights under the Ordinance and Mobilehome Residency Law, Cal. Civ.Code § 798.21. Count VI seeks injunctive and other relief against the City and Individual Defendants pursuant to Mobilehome Residency Law, Cal. Civ.Code §§ 798.21, 798.41. The Individual Defendants claim that Counts V and VI of MHC's Complaint are pendent state-law claims for which this Court's supplemental jurisdiction is erroneously sought due to the anticipated dismissal of City's motion to dismiss.[3] MHC agrees that the claims

---

2. See Declaration of Shannon Smyth–Mendoza in Support of Motion For Attorneys' Fees and Sanctions, pp. 2–3.

3. Individual Defendants incorporate the argument of City of San Jose's Motion to Dismiss in their Motion to Dismiss. MHC incorporates the arguments in its Memorandum of

are pendent and also contends that the claims against the Individual Defendants derive from a "common nucleus of operative fact," thereby establishing supplemental jurisdiction even if all of MHC's federal claims are dismissed. *City of Chicago v. International College Of Surgeons*, 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

Because this Court has dismissed all of MHC's claims in its complaint without leave to amend, it declines to exercise supplemental jurisdiction over claims V and VI, which are the only claims that involve Individual Defendants. *Herman Family Revocable Trust, et al. v. Teddy Bear*, 254 F.3d 802 (9th Cir.2001); *Levald, Inc., supra.* MHC's argument that Counts V and VI arise out of the exact same facts as MHC's procedural due process claim against the City is thereby moot.

 Moreover, this Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1) because the interpretation of California Civil Code § 798.21 raises a novel issue of state law—specifically whether the Individual Defendants are exempt from the Ordinance. In its dismissal of City's motion, the Court has declined to consider MHC's procedural due process claim that the City had rendered a final decision on the eligibility of Individual Defendants for rent control under MRL § 798.21 and MHC's rights under both the MRL and the Ordinance. Therefore, concerns for judicial economy, convenience and fairness to litigants would not be favored by the exercise of supplemental jurisdiction over MHC's claims against Individual Defendants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir.1992). Therefore,

Points and Authorities in Opposition to the

the Court grants Individual Defendants' motion to dismiss with prejudice.

## V. CONCLUSION

Based on the foregoing, the Court grants City's motion to dismiss with prejudice. The Court grants City's motion for attorneys' fees and costs. The Court denies City's motion for sanctions. The Court grants Individual Defendants' motion to dismiss with prejudice.

City's Motion to Dismiss.